The next case called Oral Argument is in re The Marriage of Jones. Counsel? Thank you, Your Honor. Please report. On an unrelated subject, I don't really know the merits of that last case. There's no good way to get to Lawrence. I guess they're gone. I don't know if you have anything to add to that statement. Your audience is gone. Well, this is about one of the main thoroughfares into the Lawrence case. Yes, yes. And we'll take judicial notice of your comment. Anybody at any workers' conference in the Lawrenceville Docket knew that we had a lot of time to get done. The law of domestic relations is largely a creature of statute. It's interesting that God has joined the legislature, which gives us the rules as to how it should be put asunder. And that obviously includes the rules of classification of property as either marital or non-marital property. In this instance, because Judge Bailey, I respectfully submit, misinterpreted the statute, the issues before this court concern issues of law. And I believe the court's review is to no vote. I think that in this case, I guess because I don't know much about divorce law and I know less about IRAs, that it would be at least helpful for me if I could review the facts very briefly. The evidence, I believe, is that Dr. Jones practiced dentistry and he established a Keogh plan in which he contributed until 1972. And then in 1972, he basically then changed his practice to a professional corporation and he maintained his Keogh plan as an inactive retirement plan. Now in July of 1982, Dr. Jones and Ms. Jones were married. And in 1983, it's interesting to note that they established, they each established an IRA. He established an IRA in his individual name and it was funded through two sources. One source was clearly marital property. It was $2,000 from a joint checking account. The other source was clearly separate property. It was $10,675 they paid from his Keogh plan, which had been his property and his separate property throughout the years prior to their marriage. Let me stop you there and ask you a question. Yes, sir. Then were there subsequent deposits to that IRA during the marriage? Yes, there were. There were a lot of subsequent deposits to it. And indeed, it's interesting to note that in 1983, the same year that Dr. Jones established his IRA account, Mrs. Jones established hers. And Mrs. Jones's IRA was funded by $2,000 from their joint checking account. It was funded by marital property. And the IRAs were maintained as separate accounts throughout the course of the marriage. And I believe that the records would demonstrate that that was indeed the intent of the party. Now, the other thing that's interesting about this case is that Dr. Jones also had a pension and profit-sharing plan, which he had established in 1972, not just for himself but for all of his employees, which included, ironically, Mrs. Jones, who was then, and at various times throughout the marriage, an employee of the professional corporation. That plan established it provided that 10% would go to the pension, 10% of earnings, 15% would go to profit-sharing. Everybody had that deal. And in fact, everybody, by the language of the pension plan, owned a percentage of the plan. They didn't own individual assets. They owned a percentage of the plan. Now, Mrs. Jones, as I've indicated, participated in that plan. And for 10 years, before he married Mrs. Jones, the doctor contributed to his pension and profit-sharing plan. And, I might add, Mrs. Jones was the person to prefer. They got married, as I indicated, in 1982. And then from 1982 to 2001, both of them contributed to the pension and profit-sharing plan. And you're honored to answer the other question that you asked. Both contributions were of our partners, which were Americans. And that was money that went into both plans. We don't dispute that. In 2001, the doctor retired, and he sold his practice. And under that plan, what happened was that he rolled over the money that he had in his pension and profit-sharing plan into his IRA. And then what happened at that point is that after he rolled it over, it was then in his individual IRA. Now, remember, Mrs. Jones did the same thing with her IRA. She rolled all of her pension and profit-sharing plan into her IRA. Now, the question then before this court is, what's marital property and what's non-marital property? I used to call it separate property, but I guess I'll call it non-marital property now. And the way that this question was addressed at the trial court, of course, is it was addressed with an accountant. And the accountant was hired. And the accountant was hired in contemplation of what the statute said, which is to try and trace and determine which is which. And in this instance, it said this accountant. And he was the only testimony offered. Mrs. Jones didn't offer the testimony of an accountant. And indeed, Judge Bailey complimented in the record the job that was done by the accountant, who thought that he had done it according to sound accounting practice. And what he did was he allocated the amounts of the pension and profit-sharing plan according to an accounting formula, which for the record is marked in the trial transcript as Exhibits 6, 7, and 8. And you can see all of those numbers. I don't think we should, but that's what I'm going to show. And he allocated those amounts. And he allocated amounts that were non-marital property, and he allocated those amounts that were marital property per a ratio, which was a ratio that he applied throughout. And he also allocated the amounts of the IRA, which were separate property, and those amounts that were marital property for both. And then based upon that, and he based that initially to address some judicial issues, the formula began with what went in at the beginning. That's our starting off. I acknowledge. Okay. At that point, $2,000 is marital property, $10,675 is whatever percentage is to the whole. He starts off that percentage marital, that percentage non-marital. That is correct. Then what happens? Then what happened at that point is that then after that is that he then came through by applying that ratio. And let's go back for just one second. He first applied that ratio approach to the pension and profit-sharing plans. Because you've got to remember that the pension and profit-sharing plans is that there was a period of time where that would have been separate property, but then there was a longer period of time where it was marital property. And so by applying that principle to the profit-sharing plan and the pension, that they both fit, is that he determined that a number of about $2,774,000 was premarital. And that included plus the gains that had been earned out of those accounts throughout that period of time. And he determined that $1,413,000 was marital. Here's what I don't understand. We know, at least I derived from the briefs, that he didn't track individual investments. That is correct. So just to take an example, he starts off, let's say it was $2,000 and $8,000. Yes, sir. Okay, so 20% is marital and 80% is non-marital if you start like that. Yes, sir. Then $2,000 more goes in. He then reallocates what percentage is marital and non-marital based on the whole then. And does he do that each time there's a contribution made? No. What he did, Judge, is based upon the allocation, as I understand that he did it, is that he allocated it according to what I believe the statute would have suggested as a related allocation. See, I still don't understand from reading the briefs what the CPA actually did. I haven't read the records, so I don't know. I'm having trouble understanding what he did. Well, and I think, Judge, what he did is that he did just what we've just suggested, is that he applied a ratio approach. And essentially what he did is that his starting off point, and the starting off point for the ratio that he applied for the pension and profit sharing plan would have been a ratio that would have reflected the respective contributions of marital and non-marital, bearing in mind that those track different time periods as it related both marital and non-marital. And then he would apply a similar ratio approach, but I believe the factual predicate for that ratio approach was the initial investments. In other words, he didn't change the ratio once more marital property came in? That's true. He did not. Okay. Justify that for me. That's exactly what the case is all about. Okay. And here's how I would justify it. I would justify it by saying that's what the statute says, which is why I began my remarks by suggesting the Domestic Relations Law of Arts and Creatures statute. The first thing I would say is this, Judge. If you look at 750 ILCS 5-503, subparagraph A, subparagraph 7. Whoa. Go ahead. It says the increase in value of property acquired by a method listed in paragraph 1 through 6, and 1 through 6 delineate non-marital property. Okay? It says that non-marital property consists of property acquired in exchange for property acquired before the marriage, property excluded by valid agreement of parties, et cetera. And then it goes on to say the increase in value of property acquired by a method listed in paragraphs 1 through 6 of this subsection, irrespective of whether the increase results from a contribution of marital property, non-marital property, the personal effort of a spouse or otherwise, subject to the right of reimbursement provided in subsection C of this section. Okay. Okay. No, you go ahead. Go ahead. Because then I've got a question. So it says, for purposes of this act, marital property means all property acquired by either spouse subsequent to the marriage except the following, which is known as non-marital property. Then you go to paragraph 7, and it says the increase in value of property acquired by a method listed in paragraphs 1 through 6. All right? So in other words, the notion being is that if we start with this IRA, and the vast majority, if we look at a couple of the cases that were cited, the vast majority of that property that began that IRA was non-marital property. Okay? So we start with the notion that the $10,000 was non-marital, $2,000 was marital. That's how this IRA began. And then you go forward, and then you say, is this, for purposes of the act, marital property means all property acquired, and then it says except the following. And number 7 is the exception. And number 6, I'm not saying it's fair, I'm just saying it's the legislature's. And number 7 says is that the increase in value of property acquired by 1 through 6, of which that 10 grand is that, irrespective of whether the increase results from a contribution of marital property. It says non-marital property, the person, wife, or spouse, or other ones. So that defines it as being separate. So that's the first part of the argument. The second part of the argument. Then it goes on and says subject to right of reimbursement. And the right of reimbursement is subject to whether or not the commingled property loses its identity. Identity. Right? True. That is correct. And that's where we get to the real issue. And the real issue is just that, let's say, who would have thought that? But this is where it gets interesting, because it really isn't. Let's assume it loses its identity. Then you're caught by subparagraph 2 of subparagraph C. Because it's one way or the other. Because if we go then and say, let's assume it lost its identity. Part of my argument is it never lost its identity. But let's assume that it lost its identity. It's just that if we look at subparagraph C.1, it says, when they are commingled by contributing one estate of property into another, resulting in the loss of identity of the contributed property. Okay? The classification of the contributed property is transmuted to the estate receiving the contribution. The estate, by receiving the contribution in this instance, would have been the non-borrowed estate. Because the vast majority of it was non-borrowed. And then you go forward and it says, although it goes on to say, provided that if borrowed and non-borrowed property are commingled into newly acquired property, resulting in the loss of identity of the contributing estates, the commingled property shall be deemed transmuted to borrowed property. That's your point. Subject to the provisions of paragraph 2. But then we're on paragraph 2. In paragraph 2 it says, all right, let's assume that as you have suggested, Your Honor, that it's been commingled and lost its identity. I want you to know I'm not conceding that, but let's just assume that. It says, number 2 says, when one estate of property, in this instance we're talking about the Merrill Estate, makes a contribution to another estate of property, remember the IRA initially. Okay, can I just ask a question here? This IRA, his IRA, was created after the marriage. His IRA was created after the marriage. And that IRA received both marital and non-marital property into the IRA. Yes, sir. So why wouldn't the IRA be marital property receiving a non-marital contribution? Because the creation of the IRA in its initial conception consisted of 85 or 90 percent of non-marital property. Okay, and? That goes back to paragraph 1. I know that. I mean, this is not very, this is not a very big deal. But here, if we go back just to the first section that we look at, we get down and we get caught by paragraph 7. And it says, the increase in value of property acquired by a method listed in paragraph 1 through 6 of this subsection irrespective of whether the increase results from a contribution of her property. But Mr. Keith, doesn't the fact that the accountant has to apply some kind of ratio help support the other side's argument that it has lost its identity and you can't track the ups and downs? Your Honor, I would respectfully say no. Okay, tell me why. Because of the language that is in subparagraph 2 of C2. Because in C2 it says, when one estate makes, when one estate of property makes a contribution to another estate of property, it then goes on to say, the contributing estate, in this instance the contributing estate would be a marital estate, because as Mr. Gersh pointed out, that's not a property. But as long as there, doesn't it go on to say as long as they're identifiable? Exactly. The contributing estate shall be reimbursed from the state transmutation, provided that no such reimbursement shall be made with respect to contribution which is not retraceable. Okay. And that's our point. The point was, he said, that's what the accountant attempted to do. He attempted to retrace it. But he, oh. What you're saying to me is, you're saying to me is, wait a second, is that if this man's account has been managed in this fashion throughout these years, it is untraceable. And then you're saying, therefore, because it's untraceable, it must all be marital property. But stop and think about what happens if you do that. Take this situation. Let's take a situation where a mom, a husband and wife get married. Alright. Wife's got $10 million. She's got $10 million and it's her separate property. And husband has, and on the day that they, after they're married, they create an IRA. And she puts the $10 million into the IRA. And he put, and then they put $5,000 of joint money into the IRA. Okay. In that situation, to take that, and then the account is managed.  And let's say it appreciates, appreciates, appreciates. But isn't what's untraceable is the appreciation rather than what can be identified that was put in separately to begin with? Just, if you look at the statute, it doesn't say that. It just doesn't say that. I mean, I think that, I mean, I get it. It's intuitive with me. I'm seeing the same thing that you are as part of the statute. But then Judge Bailey awarded the $60,000 to your client saying that that was traceable, right? He said that, that that was in a separate part of his order. I know, but what was his rationale there? I don't know. I mean, he determined it was separate property, but then in some fashion determined that the sale of the corporation and retained earnings were not separate property. So I don't understand what he's saying. I really don't. But getting back to this other point, I see the book of merits. Now what you're saying is that, all right, but wait a second. What about can't we just trace how much was put in as opposed to how much? Go ahead, please. As to how much had grown. But I would suggest to you that that isn't what it says because it would lead to that result that I just suggested. And that hypothetical where you threw in $5,000 of merit, $10 million of non-merit, and then it grew to $20 million. And then at that point somebody said, that's not a problem. Now, if that wasn't the intent of the parties, and clearly in this case, just to finish the point, I promise to finish, but just to finish the point, is that the evidence in this case was absolutely uncontradicted. That was never their intent. They each had separate accounts. And there was testimony throughout the course of this trial is that they said they maintained all their financial accounts separate. And this is a quote from Mrs. Jones. He deposited his into his personal account. I deposited mine into my personal account. We had our separate accounts before we were married, and we continued to keep those after we were married. My suggestion to your honor is that it was the intent of the parties to have each of their own IRAs, and that if you follow and you track the language of this statute, better or for worse, it's just that the argument would be this is marital property. But the catch is, subject to reimbursement. And the reimbursement provision is what came from the accountant as it would relate to what would be fair to reimbursement. And the evidence demonstrated at trials is that the reimbursement amount is substantial. I mean, Mrs. Jones doesn't have a lot of money, but, I mean, it's not as much as was awarded based upon the split paragraph of our agreement. Thank you, counsel. Counsel?  Mr. Quirk? Counsel? I'm Donnie Brochon. I represent Mr. Jones. He's the applicant. As far as counsel, I'm going to have to walk you through some of the statutes. He just got to the one that really counted the most in the final remarks. He talks about 750 ILSCS, 503C2. That's the statute that talks about no reimbursement shall be made with respect to a contribution that's not traceable by clear and convincing evidence. That's the key to this. The burden of proof in the trial court was on Dr. Jones to prove, to trace, by clear and convincing evidence that he was entitled to reimbursement. He failed to do that. The trial court so held. The burden of proof here is by manifest way to the evidence whether the trial court was correct. And I submit to you respectfully that the trial court was correct in finding that Dr. Jones did not trace by clear and convincing evidence. Indeed, Dr. Jones didn't trace at all. What he did was he substituted an accountant's, what the opposing counsel calls allocations, what the accountant called allocations. Instead of tracing or trying to trace anything at all, they made allocations. He goes out and hires an accountant, and the case becomes not what Dr. Jones did, but what he wishes he had done. He didn't keep things separate. Now, this has been a simple case. If Dr. Jones, who had already been divorced and had a full-time accountant, wanted to keep things separate, when he got married in 72, if he wanted to do that, he had a Keogh plan before marriage. He had some interest in a pension profit sharing before marriage. If he wanted to keep all that separate, he and the accountant could have got together and they could have advised a way to do that or certainly not commingle it with things that came later if that had really been his intention. What he does instead is he takes Keogh plan money before marriage, puts it into a 1983 IRA, which is created by $2,000 of marital money infused yearly up to 86, so that the amount of money in the 1983 IRA is the same, marital and non-marital. The contributions are essentially the same. They buy abscam stock. It ends up being worth 172 grand. How do we know whether the marital portion caused the gain or the non-marital portion caused the gain? The answer is we don't know. No one tried to trace it. We don't have a clue. It could have been that the non-marital fell flat and was a zero and the marital was the only thing that gained. We don't know. The same thing then is he's got 10 years of pension and profit sharing plan before marriage. He's got 20 years after marriage. He takes that when he retires into 01, and he rolls that into a new IRA, marital and non-marital portions alike. It's all grown together for all those years. He puts it in this 01 IRA. Then he rolls a 83 one in there too. Then he invests for seven more years, and we end up in a divorce court. Now, the entire time this money has been invested, there's no way to trace the gain. There's no way to tell whether the gain on this was from the non-marital contributions, which is the lion's share of the money. Contrary to what counsel says, there's two-thirds, 20 years of marriage during which this pension and profit sharing plan was mirrored. Ted, doesn't your argument assume that commingled equals transmuted? It precludes any possibility by either us lay people or an accountant or a forensic accountant from tracing assets once they are commingled into an account. I don't think it's necessarily that they couldn't trace it, because if you wanted to go in and say you own Johnson & Johnson stock or something like that, he had monthly reports coming out, annual reports coming out. You could have traced all these various stockholders and the sales and the gains and all that. No one tried to do that. If they had been able to trace all that, like the Davis case I cited to you earlier in the brief says, they could trace the stock transactions themselves. What they do here instead, because they don't even try to trace anything to establish a non-marital character, you're supposed to identify a non-marital thing and then trace its non-marital character for the years. It's assuming then it's always invested in some kind of securities or bonds. It wasn't just cash. The vast majority of this was not only stocks and bonds. If you look at the record in 1994-5, there was something Dr. Jones saw in the stock market that he didn't like. He sold off the vast majority of stocks and bonds out of one of these accounts and bought something totally different. And he changed his investments. There was a huge sell-off and rebuy. We don't know when that happened. Just in those years, marital years, what was the gain on the marital portion or the non-marital portion? Not only was it comigo, which it obviously was, each lost its identity. No one kept track. No one tried to keep track of this is yours and this is mine, this is marital and this is non-marital. No one even attempted to do that. Now, in substitution for statutory tracing, which is required, Dr. Jones goes out and gets his accountant. And his accountant decides what we'll do is we'll make hypothetical marital and non-marital states. We'll reconstruct this in a way. And the way we'll do it is we'll go back to the date of the marriage and we'll say, at this time, you had so much money in your pension profit-straight plan, so much money over here. And then we'll project from there what your gains would have been. Now, the gains is all based on ratio, not reality and not evidence, and not the actual gains. So it's not tracing. It's a projection. The first thing he does wrong, the accountant, is he pretends that the contribution of $20,000 the year of the marriage was made after the marriage when it was really made before the marriage. So it was made – he had it the other way around. He thought that he would contribute that to non-marital for Dr. Jones, but it was paid in after the marriage. So he's $20,000 off his initial number on his projections. The second thing he's wrong on is when you look at the 1983 IRA, the money goes in first. It's a $2,000 contribution from their joint bank account. Then rollover from a key of $10,000. Then for four years in a row, you get $2,000 a year in. So the record shows Dr. Jones admits there's much or more marital money in that 1983 IRA as there was non-marital. No one keeps track of it. It's all homing together. It's all invested in this AMCAP fund. How can anybody tell where the gain was before or after marriage? No one can tell. Once he puts all this money in his IRA in 2001, what he's done is spend seven more years of investing. Now, how can anybody tell? Now, he didn't try to trace it, and this is a burden to trace this. It's not impossible to trace it. What the case law says is, in a situation like that, that he's co-mingled the states, both the states, not just the non-marital but the marital estate. They have both lost their identity because of the co-mingling, and you can't tell which dollar is which. You can't tell which stock was which. And so what happens then? It transmutes to a new estate, which is a marital estate. That's what the trial court held, and I submit to you respectfully that he was correct. This statute… What about the $60,000 then? That's funny because… That kind of worries me. I think he threw him a bone after the trial is what he did, really, because it's inconsistent. Yes, it is. Sure, it's clearly inconsistent. And there were arguments made after trial. Bing Solomon, huh? Right. What he does, first of all, the trial judge gets it a little wrong. He's five grand off on how much it was, and he got it going into the wrong account, so he orders reimbursement from the wrong account. But aside from that, that entire thought is inconsistent with the overall approach to this, which is you've got to trace it. If you don't trace it, the statute clearly says, if it's not traceable by clear and convincing evidence, no reimbursement. Boom. So that's why the $60,000 is an error because the trial judge, if you read his comments, he specifically finds it wasn't traceable. And that was under a motion to reconsider, though? It was. It was. I really do think that was an afterthought, but it's an error, and it's clearly inconsistent with the other major ruling. We're not only talking about an IRA. We've got this separate million-dollar account. Let's say he's got a personal account. Into that account, he commingles all kinds of money. What he does is he puts in the proceeds of sales of a couple of airplanes for 300 grand. He sells his business when he retires, and I think it was December of 2001, and he's already gotten some money by periodic payment from the other dentists. And he gets money, which he thinks he ought to get back as non-merit. It doesn't exist anymore. It was paid in, and you can't follow it in an account or anything, and it's all been paid out in investments and no one knows what. But it's for goodwill, which is merit. It's for routine earnings, which is merit. It's for covenant not to sue, which is merit, and it's for the furnishings and the equipment in the office, which was admitted merit. There's all this merit, and yet the argument is he thinks he should get this back because it's non-merit when it's in any amount. All of that and his rental and his bonuses went in this account. He pays $500,000 to his children in gifts out of his account. How do we know without tracing whether the marital money was used to pay his children or the non-marital money? Because it's all invested in stock, and the reason it's invested is he wants it working. That's why when he goes out to buy an airplane, he mortgages his home to buy an airplane. He borrows $100,000 from his sister to buy an airplane. He borrows money from the bank. He won't take it out of his own account because he makes more money in interest on the money in his own account than the money he's going to pay the bank on the loan, his sister on the loan. Then when he sells the airplane, he doesn't pay off the house mortgage and stuff. He puts it back in his investment account because it's making more money. It's all about making money, and that's fine. This man is wonderful at making money, but he took all these source monies and he put them all into one IRA, the vast majority of which was marital, and he invested it all along, and for seven years after it was rolled into that IRA, no tracing was done. It is my position, and I believe that the evidence is sold out here, that the case law says you can't substitute some accountant's principles. He can make up the ratio if he wants to, and he can allocate whatever he wants to for general accounting purposes. That's not statutory tracing. That doesn't substitute for what the law says they have to do. They could have traced. They chose not to. They chose instead to try to use this allocation of business with the accountant. Now, if they had the possibility of doing that and chose not to do it, then that's their problem for failure to prove. Here, one of the interesting things is that Dr. Jones himself was the one that invested all the money. He was extremely good at it, and he didn't leave it up to somebody else or some company to do it. He pulled the strings himself. So wherever the money went back and forth and how he rolled it back in, all these decisions were made by him, which is the personal effort of a spouse, which is another thing that's a mirror, if you look at the statute, is a personal effort of a spouse. So from any angle you look at this, this is a classic case where you had money that was commingled, invested, constantly rolling over 30, 40 trades a year to the point where it lost, everything lost its identity, every single stock, the source of the marital or the non-marital lost its identity. You can't trace the gain or loss to either marital or non-marital. Therefore, if you can't do that, you can't calculate a reimbursement, even if counsel was right, just for the sake of argument. How would you calculate what the reimbursement ought to be, by an accountant's principles or by what the law says we should go by, which is the gain on the marital or the gain on the non-marital? We don't know what that was. That's what the Davis case and some of these other cases say. Counsel here tries to say that, well, we kind of traced the container. We traced the IRA. We traced the pension and promissory plan. It's not the receptacle of these things that you're supposed to trace under the Davis case and others. It's what's given them. And so we've got to trace the individual stocks and bonds. I ask that you respectfully fund the judgment of the trial below. Thank you, counsel. Counsel? No, that's not right. And the reason it's not right is because, look, if you take what his argument is, and this works on a separate argument. He made an argument like a defense lawyer will make in a criminal case, is that there's this hole, there's this hole, there's this problem, there's that problem. But that's not a problem because the statute has contemplated that the notion is going to be that we're going to take property, which is separate property, and then it's appreciated in value. And because you are unable to trace all of these doctrines, it's impossible. You can't do it. Let me give you an example of where you can't do it. How could you do it in a corporate account where you don't have any control over it? How could you do it? I mean, let's just say, instead, I have an IRA for my employees in my office, and it's a corporate account. How could anybody go in and trace all of those sales of stock that occurred during the course of that? It is impossible. That's why you don't mix your non-marital and marital property into that same account. You keep it separate. Or, and the alternative is that that's why the statute contemplates, is that if you can trace it, you can trace it. You hit the – I cannot answer this. There is no way to answer this. If you're going to take the position, or if this court takes the position, and if it's invested, even though the Baltimore was non-marital in the beginning, and you're going to take the position that it gains on that because they occurred during the marriage or marital, then that's fine, but then that's going to take every single IRA account, and it's automatically going to make it a marital property when the statute has contemplated a method of addressing it. But let me just say this. If you look at – remember in your reaction, look at 6, 7, 8. 6, 7, and 8 answer your question, Mr. Chairman. That's the point. The question you asked was, well, wait a second. Was there something to account for the money, meaning the marital property, that was going into these accounts during the course of the marriage? That's on those exemptions. See, what you'll see is that you're going to see on those when you look at them is you're going to see balance, you're going to see contribution, and you're going to see earnings. All of those things are in there. If we were to apply the original ratio in the very beginning, is to say it was like $11,000 was Dr. Jones' separate in 2010, that would give you a ratio of like 85%. In point of fact, after applying some of the accounting principles, which were on the contradiction, and that's where I'm going to say there's anything wrong with it, is that applying some accounting principles, it's down to like two-thirds, one-third, and that's where the accounting was done to attribute for the contributions, which are on this chart, that reflect that. But if you were to take your argument. Let me ask a question, though. Here's what I heard Mr. Grosham say. On this 83 IRA, started off 2,000 marital, I think it was 10,675 non-marital, and then for the next few years, 2,000 more marital went in through 86 or something like that to a point where there was ultimately, in principle, even contributions. Well, yes, except that. I mean, it's growing in the meantime. That's right. But also remember this, and I'm confused here, but if you throw in the pensions, that started off 500,000 non-marital and zero marital. But I heard him say there was a contributed debt for 10 years before the marriage and then 20 years after the marriage, and then that rolled into the 2001 IRA. That's true. Okay, so two. But remember, she had loans in it. I understand, but we're just talking about this one for now. So two-thirds, at least in time, was put in marital in that one. Right. In the other one, it's about even, and then applying general accounting principles, we end up with two-thirds of it being non-marital. Well, I mean— I mean, just on the numbers, it sounds— I understand what you're saying. But, see, it's just that if you were to take that—let me tell you something. Let's flip it around. Let's say that the wife had an IRA, and she put in 100,000 of assets on it on the day of the marriage, her money. And the parties contributed $100,000 of marital property to the IRA, and 20 years later, when the marriage ends, with no further contributions to the IRA, none. It's just growing to $10 million. If we took your argument, because I can't trace 20 years of stocks. If we took your argument, Judge, it's just that all of that money— Let me just make it clear I'm not making an argument. I'm playing the devil's advocate. I apologize for that. But to take your approach, okay, to take your approach, you have to treat all $10 million as marital property. And— You could still divide it according to who contributed to the marital property and so forth. In my hypothetical, there's no contributions. But by your reasoning, all 10 of them would become marital property. That's like the situation, for example—take this one. Excuse me. Why is that all marital property if you can trace it very easily, if there's no further contributions? That's what you can't trace, Judge. That's the point. Remember, it started at $900,000 marital. It started at $100,000 non-marital. And then there is a situation for the next 20 years. The investments go on and on and on. Stocks trade constantly. Trade, sold, trade, sold. Nobody can trace all of those stock sales. And they're going on for 20 years. Is it taking the approach that you're suggesting—that has been suggested by Trump? That would cause a situation to mean that because you can't trace, you know, from kickers to every chance to the marital property, that makes it all marital property. That's the point that you were making about the difference between that and contributions, which is why I'm saying that contributions are accounted for on this accounting principle. But the argument is that if you take that, that would be the logical conclusion. Why? Because it's transmutable. And it's lost its identity. And therefore, it must be marital property because—why? Because you can't trace it. Why? Because you can't cover 20 years of stock transactions. And assume further that rather than it being managed by the wife, assume it's managed by the corporate family. I mean, you're suddenly taking a situation where it's being transmutable. And obviously, the legislature must have contemplated with the language of that statute where they said you get to retrace. The legislature must have contemplated that someone has to come in and offer the government some accounting principles. There's no contrary evidence that this wasn't some accounting principle. So your argument, I get you, because you're talking about contributions. In my hypothetical, there are no contributions. But according to the Trial Court's reasoning, it would still hold marital property. I want to ask you one more question. Yes, ma'am. What about the $500,000 in gifts? How do you justify that that's marital? The $500,000 in gifts? Gifts to his children. Well, I mean, I—you know, I— You've got to sit down now. Huh? I would just say, as the Bible says in the Lord's Word, that you're a forgiver. But in terms of justifying, I can only suggest this to you, Judge, which is that you're right. I mean, you're talking about the Tentagram Boxer and other places. You know what I mean? They were married. They're not her children, though. I agree. The accounting of what you're saying there makes sense to me. Unfortunately, we're back to that stupid thing called the statute. And the statute really, in terms of contemplating what you're suggesting, is that you're suggesting, wait a second, he gave all this money away to the kids, and now, you know, that's being deducted from Mrs. Jones's share. And I can only say there were gifts that were made during the course of the marriage, and Mrs. Jones made them as well. She said, you know, she'd give, you know, whatever it was they gave her. A lot of them gave. I hope my kids will see that. I don't know how much I can give them, and I do. But that's all I can say. Thank you. Thank you, Counsel. Thank you very much, Judge. We appreciate the briefs and arguments. Counsel will take the case under advisement.